# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Charles Blanchard Construction Corp., Inc., Plaintiff,

v.

480 King Street, LLC, Defendant,

And

480 King Street, LLC, Third-Party Plaintiff,

v.

Glick/Boehm & Associates, Inc., Third-Party Defendant,

Of Whom 480 King Street, LLC is the Respondent,

And

Glick/Boehm & Associates, Inc. is the Petitioner.

Appellate Case No. 2024-001403

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Charleston County
Jennifer B. McCoy, Circuit Court Judge

———————

Opinion No. 28312
Heard September 9, 2025 – Filed January 21, 2026

———————

## AFFIRMED IN PART, REVERSED IN PART

Kent Taylor Stair, Jordan N. Teich, and Hannah E. Smith, all of Copeland, Stair, Valz & Lovell, LLP, of Charleston, for Petitioner.

Brent Souther Halversen, of Halversen & Halversen, LLC, of Mount Pleasant, and Jesse Sanchez, of The Law Office of Jesse Sanchez, LLC, of Mount Pleasant; for Respondent.

Charles Daniel Atkinson and Morgan Taylor Petty, of Wilkes Atkinson & Joyner LLC, of Spartanburg; James Alexander Joyner, of Wilkes Atkinson & Joyner LLC, of Charleston; Ryan A. Earhart and Brenten Heath DeShields, of Earhart Overstreet, LLC, of Mt. Pleasant, all for Amicus Curiae South Carolina Defense Trial Attorneys' Association.

**JUSTICE JAMES:** We granted certiorari to review the court of appeals' decision in *Charles Blanchard Construction Corp. v. 480 King Street, LLC*, 443 S.C. 165, 904 S.E.2d 182 (Ct. App. 2024). We affirm in part and reverse in part.

To resolve the issues before us, we must interpret portions of section 15-36-100 of the South Carolina Frivolous Civil Proceedings Sanctions Act (the Act). *See* S.C. Code Ann. § 15-36-10 to -100 (2005 & Supp. 2025). Subsection 15-36-100(B) provides that in an action "for damages alleging professional negligence" against a professional listed in subsection 15-36-100(G), the plaintiff must contemporaneously file with its complaint an expert witness affidavit detailing the defendant professional's standard of care and at least one deviation therefrom. Architects are listed in subsection 15-36-100(G), and the defendant in this case is an architectural firm.

This appeal stems from the circuit court's order granting the petitioner's Rule 12(b)(6) motion to dismiss on the ground that the foregoing affidavit requirement was not met. "When reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court." *Doe v. Bishop of Charleston*, 407 S.C. 128, 134, 754 S.E.2d 494, 497 (2014) (citing *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007)). Dismissal is

improper "[i]f the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory." *Marion*, 373 S.C. at 395, 645 S.E.2d at 247.

The record contains excerpts from two depositions of Louis Hackney, the professional engineer who provided the affidavit in question. The order of dismissal does not reference the excerpts, but they were before the circuit court, and counsel for both parties referred to them during the motion hearing. Rule 12(b) provides that if, in conjunction with a 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Our standard of review of an order granting summary judgment is the same standard employed by the circuit court. "Rule 56(c) . . . provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (quoting Rule 56(c), SCRCP). Our decision in this case is the same under either Rule 12(b)(6) or Rule 56(c).

"Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012) (quoting *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)).

## I.

480 King Street, LLC (480 King) and Glick/Boehm & Associates, Inc. (GBA) entered into a contract calling for GBA to design a stair tower on 480 King's premises in Charleston. The contract is not in the record, but the parties concede the contract called for GBA to be not only the architect of the project, but also the construction contract administrator of the project. 480 King sued GBA for negligence, breach of contract, and breach of warranty.[1] The complaint alleges GBA negligently designed

---

[1] The general contractor on the project sued 480 King for nonpayment, and 480 King counterclaimed against the general contractor, asserting various claims for relief. That action and 480 King's action against GBA were consolidated by the circuit

the stair tower (e.g., improperly designed elevator, electrical conduit, HVAC unit header, windows, flashing, and stairs). The complaint also alleges GBA negligently performed construction administration[2] services (e.g., failed to properly administer the construction of the tower for compliance with plans, specifications, and applicable building codes, and failed to detect non-code compliant work performed by others). The complaint alleges GBA breached the contract in particulars identical to those specified in the negligence cause of action. The complaint also alleges that "GBA breached [its] express and implied warranties by failing to design the stair tower free from defects and in compliance with applicable building codes and industry standards." It is important to our decision that 480 King centers its claims upon both architectural design issues and construction administration issues.

Because the expiration of the statute of limitations was looming, 480 King did not file the required expert witness affidavit either with its complaint or within the forty-five-day grace period provided in section 15-36-100. In its answer, GBA asserted the defense of failure to state a claim based on this deficiency and promptly moved to dismiss on the same ground. The circuit court (Judge J.C. Nicholson, Jr.) denied GBA's motion, granted 480 King an extension to file the required affidavit, and gave GBA thirty days from the filing of the affidavit to contest its sufficiency. 480 King timely filed Hackney's affidavit, in which Hackney attested to his professional experience related to design and construction:

> As a professional Engineer, I am routinely responsible for property condition assessments, structural and nonstructural failure analysis, building envelope evaluations, damage assessments, and engineering investigations of both new and existing construction involving numerous types of structures. I also have experience p[er]forming contract administration services and preparing planning reports, designs, specifications, cost opinions, and contract documents for new construction and repair projects. I have experience investigating and

---

court, but the dispute between 480 King and the contractor are irrelevant to the issues before us.

[2] 480 King's complaint refers to GBA's "construction administration" services, but its brief refers to GBA's "contract administration" services. In his affidavit, Hackney refers to "contract administration," but in his deposition, he refers to "construction administration." These descriptors obviously identify the same thing.

assessing the design and construction of commercial buildings in Charleston . . . .

Hackney stated his "opinion that elements of the building's envelope ha[ve] been compromised by design and construction deficiencies." He stated missing information from the plans resulted in construction errors, additional costs, and delays; incorrect information in the project specifications resulted in construction errors, additional costs, and delays; and "the Architect deviated from the standard of care in failing to properly complete contract administration services as part of its contractual duties so as to prevent the aforementioned improper and code violating construction methods to occur . . . ." On its face, the affidavit demonstrated Hackney's specialized knowledge (acquired through experience) in the areas of architectural design and contract administration. The affidavit sufficiently explained Hackney's credentials and why he was qualified to give opinions in those areas. The affidavit also established Hackney's familiarity with the standard of care for architects with respect to matters of design and his familiarity with the standard of care with respect to contract administration, and it included his opinion that GBA deviated from those standards. Because the affidavit was facially sufficient under the Act, GBA did not contest the affidavit within the thirty days allowed by Judge Nicholson.

The parties proceeded with discovery, and Hackney gave three depositions, the last two of which were taken three years after Hackney signed his affidavit. The record contains none of the first deposition. The second deposition exceeds 209 pages, but only two pages are in the record. The third deposition exceeds 284 pages, but only five pages are in the record. In his second deposition, Hackney testified he thought he "could provide an opinion" about the standard of care of an architect, but "to this point I have not provided one." In that deposition, he followed up with the statement that he did not intend to offer such an opinion "at this time."

Hackney's third deposition is key. In that deposition, Hackney testified he would not offer an opinion as to the standard of care of an architect, and he stated he did not intend his affidavit to suggest otherwise. However, Hackney testified he was prepared to offer opinions as to the standard of care and deviations "pertaining to the construction phase services and construction administration services that were provided." He clarified that he intended to state an opinion as to the standard of care of "a design professional . . . during construction phase services." The excerpt concludes with Hackney's testimony that he would offer an opinion "about the standard of care that a professional would provide in either giving or completing construction administration services, whether that be an architect or an engineer. Those services are similar across the board of professionals . . . ."

Several months after Hackney's last deposition, GBA moved under Rule 12(b)(6), SCRCP, to dismiss all claims on the ground that Hackney's deposition testimony revealed his affidavit did not satisfy subsection 15-36-100(B). GBA argued that, because Hackney is not an architect, the Act does not allow him to offer an opinion as to the standard of care of any service performed by an architect, whether that service be architectural design or performing construction administration services. GBA also argued the warranty and contract claims are grounded in negligence, thus requiring an affidavit. The circuit court (Judge Jennifer B. McCoy) granted the motion. The circuit court ruled "the Defendant in this case is an Architect and its services must be judged against the standard of care of an Architect." The circuit court dismissed the entire action because Hackney was not an architect, had no experience as an architect, and did not intend to offer an opinion against GBA as to the standard of care of an architect.

## II.

480 King appealed, arguing (1) GBA was time-barred from moving to dismiss based on the deficiency of Hackney's affidavit because GBA did not move to challenge the sufficiency of the affidavit within the thirty days allowed by Judge Nicholson; (2) section 15-36-100 does not require the expert witness to be a professional in the same field as the defendant; (3) even if Hackney's affidavit was insufficient to support its claim for negligent performance of architectural services, the affidavit was sufficient to support its claim for negligent construction administration; and (4) its warranty and contract claims should not have been dismissed, because the affidavit requirement in section 15-36-100 applies only to claims for professional negligence.

The court of appeals affirmed the circuit court in part, reversed in part, and remanded. *Charles Blanchard Constr. Corp.*, 443 S.C. at 172, 904 S.E.2d at 185. The court held the expiration of Judge Nicholson's thirty-day deadline did not bar GBA from later contesting the Hackney affidavit, concluding "[t]here was good cause for GBA to contest the sufficiency of the expert's affidavit after further information was uncovered in his three depositions." *Id.* at 170, 904 S.E.2d at 184. In our order granting certiorari, we asked the parties to address whether a defendant who does not file a motion to dismiss contemporaneously with its initial responsive pleading on the ground that the affidavit does not comply with section 15-36-100 may subsequently base a Rule 12(b)(6) motion to dismiss on the plaintiff's failure to file a sufficient affidavit under section 15-36-100. We recognize GBA did file such a motion with its answer. Four years after Judge Nicholson allowed 480 King to submit Hackney's affidavit, GBA again moved to dismiss after Hackney's third

deposition.  Under the facts of this case, we agree with the court of appeals that GBA did not waive its right to contest Hackney's affidavit, despite the great lapse in time.

We now address the issues raised by GBA.

## III.

### A.

GBA's overarching argument is that Hackney's affidavit is insufficient in all respects because he is not an architect and GBA is an architectural firm.  The circuit court dismissed the entire action on that ground, but the court of appeals reversed. *Id.* at 171, 904 S.E.2d at 185.  GBA argues this holding "has blurred the brightline interpretation which has been applied by the bench, bar, and professionals in this State since the institution of the Act . . . ."  We disagree.

The plain language of section 15-36-100 supports the court of appeals' holding that the Act does not require that the affiant be a professional in the same field as the defendant.  In an action for professional negligence against a professional listed in subsection 15-36-100(G), "the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit."  S.C. Code Ann. § 15-36-100(B). Subsection 15-36-100(A) defines an "expert witness" as "an expert who is qualified as to the acceptable conduct of the professional whose conduct is at issue . . . ." Subsections 15-36-100(A)(1)-(2) add that the expert must be "licensed by an appropriate regulatory agency to practice his or her profession in the location in which the expert practices or teaches" and be board certified in the area of practice or specialty about which the opinion on the standard of care is offered.  If the expert is licensed in the profession but is not board certified, subsection 15-36-100(A)(2)(b) provides the expert may also be qualified if the expert "has actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in" active practice in the profession or teaching of the area of practice.

Standing alone, subsections 15-36-100(A)(1) and (2) would significantly narrow the field of experts allowed to provide affidavits required by subsection 15-36-100(B).  However, those two subsections do not stand alone.  As the court of appeals correctly noted, subsection 15-36-100(A)(3) provides a third path for a person to be an expert witness under the Act.  Under subsection 15-36-100(A)(3), the definition of "expert witness" includes:

[A]n individual not covered by subsections (A)(1) or (2), that has scientific, technical, or other specialized knowledge which may assist the trier of fact in understanding the evidence and determining a fact or issue in the case, by reason of the individual's study, experience, or both. However, an affidavit filed pursuant to subsection (B) by an expert qualified under this subsection must contain an explanation of the expert's credentials and why the expert is qualified to conduct the review required by subsection (B).

S.C. Code Ann. § 15-36-100(A)(3). GBA's interpretation of subsection 15-36-100(A), if correct, would nullify subsection 15-36-100(A)(3).[3] Had the legislature intended to limit the definition of "expert witness" to only people practicing in the same field as the defendant, it would not have inserted (A)(3) as an alternative definition. Therefore, we affirm the court of appeals' holding that the affiant need not be a member of the same profession as the defendant, as long as the requirements of (A)(3) are met. *See Charles Blanchard Constr. Corp.*, 443 S.C. at 171, 904 S.E.2d at 185; *see also Eades v. Palmetto Cardiovascular & Thoracic, PA*, 422 S.C. 196, 203-04, 810 S.E.2d 848, 852 (2018) (holding a vascular and critical care surgeon was qualified under section 15-36-100 to opine as to the standard of care of emergency medicine and primary care doctors based on the affidavit listing the expert's specialized technical knowledge regarding the plaintiff's treatment).[4]

In its complaint, 480 King alleges GBA negligently performed construction administration services. In his affidavit, Hackney attested to his "experience p[er]forming contract administration services and preparing planning reports, designs, specifications, and contract documents for new construction and repair projects." He also attested to GBA's deviation from the standard of care for contract administration, including missing information from the plans that resulted in construction errors, additional costs, and delays; and incorrect information in the project specifications that resulted in construction errors, additional costs, and delays. He also stated in his affidavit that "the Architect deviated from the standard of care in failing to properly complete contract administration services as part of its contractual duties so as to prevent the aforementioned improper and code violating construction methods to occur . . . ." Hackney's testimony in his third deposition did

---

[3] During oral argument, GBA had no explanation for why, if its interpretation of section 15-36-100 is correct, it did not challenge the affidavit within the thirty days allowed by Judge Nicholson.

[4] We reject GBA's contention that *Eades* is limited to medical malpractice actions.

not contradict this portion of his affidavit testimony. We affirm the court of appeals' holding that Hackney's affidavit satisfied subsection 15-36-100(A)(3) insofar as 480 King's claim for negligent construction administration is concerned.

**B.**

We next address 480 King's claim for negligent architectural design. In its complaint, 480 King alleges GBA agreed "to provide professional architectural services for the design of the stair tower," to include "the issuance of the plans and specifications" for its construction. Specifically, 480 King alleges GBA failed to properly design and prepare specifications; failed to specify products compliant with building codes; and improperly designed the elevator system, electrical conduit, HVAC unit header, soffit/header, windows, and stairs.

The court of appeals affirmed "the dismissal of 480 King's negligent design and supervision claims to the extent they require testimony by an expert qualified to address an architect's standard of care." *Id.* at 172, 904 S.E.2d at 185. The court remanded the claim, noting its viability could be revisited through a "properly supported motion for summary judgment." *Id.* at 172 n.2, 904 S.E.2d at 185 n.2. As we have held, under section 15-36-100(A)(3), a non-architect could potentially submit an acceptable affidavit to support a claim for negligent architectural design; however, that is a moot point in this case because Hackney confirmed in his third deposition that he would not offer an opinion on any subject other than construction administration. 480 King has no claim against GBA for negligent architectural design because 480 King did not submit an affidavit from an expert as to architectural design. There is no need to remand a claim that does not exist. As for 480 King's claim for negligent supervision, we hold any such claim is subsumed in its claim for negligent construction administration.

**C.**

Finally, we address the court of appeals' reversal of the circuit court's dismissal of 480 King's breach of contract and breach of warranty claims and the remand of those claims to the circuit court.[5] GBA first argues the breach of contract and warranty claims must be dismissed because subsection 15-36-100(C)(1) provides that "<u>the complaint</u> is subject to dismissal for failure to state a claim" when

---

[5] 480 King's argument that its breach of contract and breach of warranty claims are not subject to the section 15-36-100 affidavit requirement was raised to and ruled upon by the circuit court. Therefore, we reject GBA's argument that this issue is not preserved for review.

the affidavit requirement is not met. S.C. Code Ann. § 15-36-100(C)(1) (emphasis added). GBA argues this language "is abundantly clear – the Act does not reference dismissal of just negligence causes of action, and instead chooses to reference the 'complaint' as a whole." According to GBA, an otherwise valid non-negligence cause of action in the complaint must be dismissed if the negligence cause of action is not supported by an appropriate affidavit. We reject GBA's construction of 15-36-100(C)(1). Subject to an exception not applicable here, subsection 15-36-100(B) provides the affidavit requirement applies "in an action for damages alleging professional negligence." It would be absurd to conclude that otherwise valid non-negligence claims must be dismissed if the affidavit requirement for a professional negligence claim is not met. In any event, as we have held, the affidavit requirement <u>was</u> met as to negligent construction administration.

GBA next argues the contract and warranty claims are subject to the section 15-36-100 affidavit requirement because they are grounded in negligence. The court of appeals held that "[b]ased on the language of 480 King's complaint and the record before us, we are unable to agree that the breach of contract and breach of warranty claims were properly dismissed at this stage of litigation." *Charles Blanchard Constr. Corp.*, 443 S.C. at 170, 904 S.E.2d at 184. The court held dismissal of those claims would be proper if proceedings on remand established the claims were "grounded in professional negligence and the affidavit failed to meet the requirements of section 15-36-100 . . . ." *Id.*

The particulars 480 King alleges in its breach of contract action are identical to the particulars it alleges in its negligence cause of action; therefore, the breach of contract action is indisputably grounded in negligence and is, therefore, subject to the affidavit requirement. As we held in section III.B above, the affidavit requirement has not been met as to claims for negligent architectural design, but it has been met as to construction administration. The breach of contract claim as it relates to construction administration may go forward in the circuit court. The breach of contract claim as it relates to negligent architectural design was properly dismissed by the circuit court, and no remand is necessary.

In its breach of warranty cause of action, 480 King incorporates by reference each allegation from its breach of contract cause of action. Because the contract action is grounded in negligence, so is the warranty action. 480 King specifically limits its warranty claim to matters of architectural design by alleging "GBA breached [its] express and implied warranties by failing to design the stair tower free from defects and in compliance with applicable building codes and industry standards." Because the affidavit requirement was not met as to matters of

architectural design, the warranty claim was properly dismissed by the circuit court, and no remand is warranted.[6]

## IV.

We affirm the court of appeals' reversal of the circuit court's dismissal of 480 King's claim for negligent construction administration, as Hackney's affidavit satisfied the Act as to that cause of action. Because Hackney's affidavit did not satisfy the Act as to 480 King's claim for negligent architectural design, we reverse the court of appeals' remand of that claim to the circuit court, and we reinstate the circuit court's dismissal of that claim. Any claim for negligent supervision is subsumed into 480 King's claim for negligent construction administration. We reverse the court of appeals' holding as to 480 King's breach of contract claim, and we hold that claim can go forward only as to construction administration. We hold the circuit court properly dismissed 480 King's breach of warranty claim; therefore, we reverse the court of appeals' remand of that claim.

**AFFIRMED IN PART, REVERSED IN PART.**

**KITTREDGE, C.J., FEW, HILL and VERDIN, JJ., concur. FEW, J., concurring in a separate opinion.**

---

[6] In *Skydive Myrtle Beach, Inc. v. Horry Cnty.*, we held that "the circuit court may not dismiss a claim [under Rule 12(b)(6)] with prejudice unless the plaintiff is given a meaningful chance to amend the complaint, and after considering the amended pleading, the court is certain there is no set of facts upon which relief can be granted." 426 S.C. 175, 189, 826 S.E.2d 585, 592 (2019). However, 480 King did not ask the circuit court for leave to amend its contract and warranty claims.

**JUSTICE FEW:** I concur in the majority opinion. I write separately to address my view that in enacting section 15-36-100 of the South Carolina Code (Supp. 2025), the General Assembly did not intend the validity of the affidavit required by subsection 15-36-100(B) to be litigated at any point after the defendant's initial opportunity to contest the affidavit's validity. We permit the late challenge to the affidavit here—as the majority appropriately states, "Under the facts of this case . . ."—because this case presents a truly unique situation. To explain, I point out two important circumstances that remove this case from what I believe the General Assembly intended to be almost universally true—any challenge to the validity of the subsection 15-36-100(B) affidavit must be made reasonably promptly after the affidavit is filed with the complaint. First, 480 King Street, LLC's third-party complaint does not articulate even a vague theory of how Glick/Boehm & Associates, Inc. did or failed to do anything in designing the stair tower that caused 480 King damages. Even as late as during oral argument at this Court—nine years after 480 King filed the complaint and affidavit we now review—when I pressed counsel for 480 King to articulate a theory of how design deficiencies caused water intrusion, for example, counsel could not articulate *any* such theory. Section 15-36-100 contemplates that counsel will understand what the case is about at the time the complaint is filed and lead the expert to set forth that understanding in the subsection 15-36-100(B) affidavit. That did not happen in this case. Second, as the majority explains, the statements the expert made in his depositions simply cannot be squared with his statements in the affidavit. The expert—in effect, even if not by intent—made misrepresentations in the affidavit that concealed what later turned out to be a sound basis for the defendant to contest the validity of the affidavit as to design deficiencies. At the time of the defendant's initial opportunity to contest the validity of the affidavit, however, the defendant had no reasonable basis on which to challenge the affidavit.